UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| PENNY L. PATINO, et al., | Case No. 16-cv-02695-LB |
| Plaintiffs, | |
| v. | **ORDER GRANTING THE DEFENDANTS' MOTION TO DISMISS** |
| FRANKLIN CREDIT MANAGEMENT CORPORATION, et al., | Re: ECF No. 7 |
| Defendants. | |

## INTRODUCTION

In this mortgage-foreclosure case, Penny Patino, proceeding *pro se*, brings nine claims against three defendants: Franklin Credit Management Corporation, Bosco Credit, and The Wolf Firm.[1] Ms. Patino's claims, though difficult to understand, center around the formation, rescission, and foreclosure of a debt secured by a deed of trust on her Danville, California property.[2] The defendants now move to dismiss the complaint under Rule 12(b)(6).[3] The court can decide this

---

[1] *See generally* Compl. — ECF No. 1. Record citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Compl. at 1–5.

[3] Motion to Dismiss — ECF No. 7.

ORDER — No. 16-cv-02695-LB

United States District Court
Northern District of California

1  matter without oral argument. N.D. Cal. Civ. L.R. 7-1(b). The court grants the defendants' motion
2  because Ms. Patino fails to state a plausible claim for relief but grants Ms. Patino leave to amend.

## STATEMENT

The following facts in this section are from the complaint and the loan-related documents, the existence of which the court judicially notices as matters of the public record (see Analysis Section 1, below).

Ms. Patino lives in Danville, California.[4] She is sixty-four years old, "disabled [in] body and mentally not capable of contracting[,]" and "was pursued and pressured into signing" a loan with the defendants in July 2006.[5] The loan, a revolving credit facility for $159,984, was secured by a deed of trust on her Danville property in favor of the lender, Cal State 9 Credit Union.[6] Ms. Patino wrote a check to return the money and rescind the loan.[7] Yet "they" (the defendants) wrote "VOID" on and an "X" through Ms. Patino's check and sent it back.[8] Over seven years later, a new trustee — The Wolf Firm — demanded that Ms. Patino pay a lump sum within thirty days.[9]

Over the years, there were several publicly recorded documents purportedly related to Ms. Patino's loan. On May 28, 2008, Cal State 9 Credit Union assigned the deed of trust to defendant Bosco Credit, but Ms. Patino asserts that Cal State 9 told her the transfer was to defendant Franklin Credit.[10] In September 2015, The Wolf Firm was substituted as trustee on the deed.[11] Two weeks later, The Wolf Firm filed a Notice of Default and Election to Sell on Ms. Patino's property.[12] Ms. Patino asserts that the notice was forged, contains the incorrect loan balance, and

---

[4] Compl. at 2, 3, 18.
[5] *Id.* at 3–4, 9.
[6] Deed of Trust — ECF No. 7-2 at 2–3; Compl. at 10.
[7] Compl. at 4, 10.
[8] *Id.*
[9] *Id.*
[10] *Id.* at 4; Assignment of Deed of Trust — ECF No. 7-2 at 23–24.
[11] Substitution of Trustee — ECF No. 7-2 at 26.
[12] Notice of Default and Election to Sell — ECF No. 7-2 at 28–42; Compl. at 7.

ORDER — No. 16-cv-02695-LB                    2

1   was therefore void.[13] Ms. Patino told a "Sindy" about the notice's problems, but Sindy said that it
2   was "not the[ir] problem" and that the demand made was "OK."[14]
3       A Notice of Trustee's Sale was then filed and Ms. Patino filed suit.[15] She specifically asserts
4   the following nine claims against each defendant: (1) violation of "Consumer Financial Protection
5   Bureau 1/2014;" (2) violation of "Penal Code Section 115;" (3) violation of "Dodd-Frank Act
6   1/10/2014;" (4) violation of article I, section 1 of the California Constitution; (5) violation of
7   California Finance Lenders Law, Cal. Fin. Code §§ 22000 *et seq.*; (6) "statute of limitations 6
8   years;" (7) negligence; (8) declaratory relief; and (9) negligent infliction of emotional distress.[16]
9   The defendants move to dismiss the complaint under Rule 12(b)(6).[17]

**RULE 12(B)(6) STANDARD**

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon which they rest. *See* Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a claim for relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (internal citations omitted).

To survive a motion to dismiss, a complaint must contain sufficient factual allegations, accepted as true, "'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

---

[13] Compl. at 5, 7, 18.
[14] *Id.* at 5, 7, 18.
[15] Notice of Trustee's Sale — ECF No. 7-2 at 44–51.
[16] Compl. at 6–19.
[17] Motion to Dismiss — ECF No. 7.

United States District Court
Northern District of California

1  defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a
2  'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted
3  unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are
4  'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and
5  plausibility of 'entitlement to relief.''" *Id.* (quoting *Twombly*, 550 U.S. at 557).

6  If a court dismisses a complaint, it should give leave to amend unless the "the pleading could
7  not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. Northern*
8  *California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

## ANALYSIS

### 1. Requests for Judicial Notice

Both parties make requests for judicial notice under Federal Rule of Evidence 201.[18] "[A] court may judicially notice a fact that is not subject to reasonable disputes because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

First, the defendants ask that the court judicially notice six publicly recorded documents: (1) the credit line deed of trust; (2) a grant deed signed by Ms. Patino; (3) the Assignment of Deed of Trust; (4) the Substitution of Trustee; (5) the Notice of Default and Election to Sell Under Deed of Trust; and (6) the Notice of Trustee's Sale.[19] The court takes judicial notice of the existence of these documents as matters of the public record, but not the truth of the contents to the extent disputed by Ms. Patino. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) ("[A] court may not take judicial notice of a fact that is 'subject to reasonable dispute.'").

---

[18] Defendants' Request for Judicial Notice — ECF No. 7-1; Plaintiff's Request for Judicial Notice — ECF No. 18.

[19] Defendants' Request for Judicial Notice.

Second, Ms. Patino asks the court to judicially notice several documents.[20] The defendants oppose the request.[21] The court does not take judicial notice of these documents because none of them presents the type of fact or existence that is generally known in the jurisdiction or that can be readily and accurately determined. Ms. Patino's records are instead partially handwritten, incomplete loan documents and private communications that the court cannot judicially notice. The court therefore denies Ms. Patino's request.

**2. Ms. Patino Does Not State a Plausible Claim to Relief**

**2.1 Claims 1 and 3: the Consumer Financial Protection Bureau and the Dodd-Frank Act**

Ms. Patino asserts a claim for violation of the "Consumer Financial Protection Bureau 1/2014" and the "Dodd-Frank Act 1/10/2014."[22] In her CFPB claim, she alleges that all defendants failed to provide "notification of foreclosure alternatives" and failed to provide "clear monthly mortgage statements."[23] In her Dodd-Frank claim, she asserts essentially the same things, alleging that she did not receive monthly mortgage statements.[24] She also says that she did not receive written mortgage workout options from Franklin Credit.[25]

There are several problems with Ms. Patino's claims. First, Dodd-Frank created the Consumer Financial Protection Bureau; her styling of these two claims is confusing. Second, the CFPB is an agency designed to "enforce Federal consumer financial law"; it is not a law itself that can be violated. *See* 12 U.S.C. § 5511(a). Third, and most important, Ms. Patino fails to identify (1) the specific legal basis for her claims and (2) the specific defendants responsible for the alleged wrongdoing (other than one allegation against Franklin Credit). This is critical because the complaint must be specific enough to allow the defendants to answer, which they cannot do

---

[20] Plaintiff's Request for Judicial Notice.

[21] Objections and Opposition to Plaintiff's Request for Judicial Notice — ECF No. 22.

[22] Compl. at 6, 8.

[23] *Id.* at 6

[24] *Id.* at 8

[25] *Id.*

without more information. Claims not based on specific laws or on specific defendants' misconduct are too ambiguous to give notice under Rule 8(a)(2). The court therefore dismisses Ms. Patino's claims without prejudice.

### 2.2 Claim 2: California Penal Code 115

Ms. Patino alleges that the defendants violated California Penal Code section 115, which makes knowingly recording a forged instrument a felony. Cal. Pen. Code § 115(a).[26] Ms. Patino's claim is based on The Wolf Firm's recording of the Notice of Default despite Ms. Patino's warning that it contained an incorrect loan balance and a forged signature (supposedly evidenced by different handwriting styles).[27] The problem with this claim is that section 115 is a criminal statute that does not provide a private right of action. *See* Cal. Pen. Code § 115; *Ellis v. City of San Diego,* 176 F.3d 1183, 1189 (9th Cir.1999) (finding district court properly dismissed claims for violation of California Penal Code sections that did not create individual rights); *Woodrow v. Cnty. of Merced*, No. 1:13-CV-01505-AWI, 2015 WL 164427, at *8 (E.D. Cal. Jan. 13, 2015) (finding "no indication of a private right of action" in section 115); *Byrd v. Sand Canyon Corp.*, No. CIV. S-10-1914, 2010 WL 3942830, at *2 (E.D. Cal. Oct. 7, 2010).

Because California Penal Code section 115 does not provide a private right of action, the court dismisses this claim with prejudice. Ms. Patino may not reassert this claim.

### 2.3 Claim 4: Article 1, Section 1 of the California Constitution

Ms. Patino also brings a claim under article 1, section 1 of the California Constitution.[28] That section provides that all people are "free and independent and have inalienable rights" — which includes "enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy." Cal. Const. art. 1, § 1. The defendants

---

[26] *Id.* at 6–7.

[27] *Id.* at 7, 12.

[28] *Id.* at 9–10.

1  do not make a specific argument to dismiss this claim; Ms. Patino argues this means the motion
2  should be denied.[29] The court will, however, address the plausibility of this claim because the
3  defendants broadly move to dismiss the entire complaint.[30]

4  Ms. Patino's claim here appears based on several alleged wrongdoings (*i.e.* she was not
5  capable of contracting; she rescinded the loan; and the defendants are foreclosing with no
6  expectation of profit), all of which she asserts the CFPB says violate her "constitutional right to
7  defending [her] life."[31] This raises several issues. First, the CFPB does not establish what does and
8  does not violate the California Constitution. Second, the only allegations against the named
9  defendants — that Franklin Credit did not send her a letter and has "scammed many homeowners"
10 — are insufficient to plausibly assert a deprivation of her constitutional rights.[32] The rest of her
11 allegations are based on the formation and rescission of the loan agreement with Cal State 9 Credit
12 Union, a non-party.[33] Third, Ms. Patino has not plausibly pleaded that the defendants' sale of the
13 property would "give Defendants -0- money" (just because she has no equity does not mean the
14 defendants will not receive any sale proceeds), or that such a result would be unlawful under the
15 California Constitution. And fourth, "nonjudicial foreclosure of a deed of trust constitutes private
16 action authorized by contract[.]"*Garfinkle v. Superior Court of Contra Costa County*, 21 Cal. 3d
17 268, 282 (1978). The California Constitution's declaration of rights provisions generally —
18 though not always — have a state action requirement. *See Hill v. Nat'l Collegiate Athletic Ass'n*, 7
19 Cal. 4th 1, 19–20 (1994) (no state action requirement for right to privacy, but noting others). The
20 defendants are private actors exercising their right to non-judicial foreclosure, and absent authority
21 to the contrary, Ms. Patino's claim under article I, section 1 appears to require state action.
22 The court dismisses Ms. Patino's claim without prejudice.

---

[29] *See generally* Motion to Dismiss; Opposition at 26.

[30] Motion to Dismiss at 19 ("Plaintiff's lawsuit is vague, overly ambiguous, and fails to state any claim against any defendant.")

[31] Compl. at 9–10.

[32] *Id.* at 9.

[33] *Id.* at 9–10.

ORDER — No. 16-cv-02695-LB                7

**2.4 Claim 5: California Finance Lenders Law**

Ms. Patino asserts that the defendants violated the California Finance Lenders Law by making a loan that she was incapable of repaying.[34] *See* Cal. Fin. Code §§ 22000 *et seq.* Under cited lenders law regulations:

> When making or negotiating loans, a finance company shall take into consideration, in determining the size and duration thereof, the financial ability of the borrowers to repay the same, to the end that the borrowers should be reasonably to repay said loans in the time and manner provided in the loan contracts.

Cal. Code Regs. tit. 10, § 1452; Cal. Fin. Code § 22150. Here, Ms. Patino asserts that the defendants violated this section because "[t]here would . . . be a[n] 80% loan to value" ratio.[35]

There are two issues with this claim. First, the entity that made the loan — Cal State 9 Credit Union — is not a party to the suit. The named defendants did not make the loan, and thus could not have failed to take these factors into consideration. Second, although Ms. Patino asserts that there "would be" a loan-to-value ratio of 80%, she does not allege facts plausibly showing that (1) the loan-to-value ratio was 80% (*i.e.* she does not plead the value of her home); (2) the lender did not consider these factors; or (3) she was not reasonably able to repay the loan (*i.e.* she does not plead her income and other debt obligations). *See O'Donovan v. Cashcall, Inc.*, No. C08-03174 MEJ, 2009 WL 1833990, at *11 (N.D. Cal. June 24, 2009) (dismissing claim where plaintiff did not allege facts, "such as information about Plaintiffs' income and other debt obligations, although such information is presumably within Plaintiffs' knowledge").

The court accordingly dismisses the claim without prejudice.

**2.5 Claim 6: Statute of Limitations**

Ms. Patino calls her sixth claim "statute of limitations 6 years."[36] Without citing specific case law or statutory authority, she asserts that "enforcement of the deed of trust must take place during

---

[34] *Id.* at 10–11.

[35] *Id.* at 11.

[36] *Id.* at 11–12.

ORDER — No. 16-cv-02695-LB                        8

the six year period" after default.[37] There are two distinct rights of foreclosure: judicial foreclosure and non-judicial foreclosure. *See Ung v. Koehler*, 135 Cal. App. 4th 186, 192 (2005). The right of judicial foreclosure terminates on the expiration of the statute of limitations on the underlying debt — typically, four years after the final maturity date. *Id.* at 193, 198 (citing Cal. Civ. Proc. §§ 337, 725a, 2911). The right of non-judicial foreclosure, on the other hand, terminates ten years after the final maturity date if the maturity date is "ascertainable from the recorded evidence of indebtedness." Cal. Civ. Code § 882.020(a)(1).

The defendants here are engaging in a non-judicial foreclosure. The evidence of indebtedness (a/k/a "the record" a/k/a the deed of trust),[38] shows that the maturity date on Ms. Patino's credit line is July 20, 2031.[39] That means the right of non-judicial foreclosure does not expire until July 20, 2041 — ten years after the maturity date. The Wolf Firm filed the Notice of Default on October 8, 2015, well before the statute of limitations expires.[40] The court therefore dismisses the claim without leave to amend because amendment would be futile.

**2.6 Claims 7 and 9: Negligence and Negligent Infliction of Emotional Distress**

Ms. Patino brings separate claims for negligence and negligent infliction of emotional distress.[41] The elements of a negligence claim are (1) the existence of a duty to exercise due care, (2) breach of that duty, (3) causation, and (4) damages. *See Merrill v. Navegar, Inc.*, 26 Cal. 4th 465, 500 (2001). "'Negligent infliction of emotional distress' is not an independent tort doctrine." *Varnado v. Midland Funding LLC*, 43 F. Supp. 3d 985, 990 (N.D. Cal. 2014) (citing *Potter v.*

---

[37] *Id.* at 11.

[38] Prior to 2007, section 882.020 terminated the right of non-judicial foreclosure ten years after the maturity date if the maturity date was "ascertainable from *the record*." Cal. Civ. Code § 882.020(a)(1) (emphasis added). At least two California appellate courts held that "the record" meant the evidence of indebtedness — *i.e.* the deed of trust — and did not include all recorded documents, such as later-recorded notices of default. *See Ung*, 135 Cal. App. 4th at 204; *Schmidli v. Pearce*, 178 Cal. App. 4th 305, 315–16 (2009).

[39] Deed of Trust — ECF No. 7-2 at 2.

[40] Notice of Default — ECF No. 7-2 at 28.

[41] Compl. at 12–16, 17–19.

*Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 984 (1993)). It is instead "a form of the tort of negligence, to which the elements of duty, breach of duty, causation and damages apply." *Varnado*, 43 F. Supp. 3d at 990 (quoting *Griffith v. Bank of Am., N.A.*, No. CV-11-5867 PA (FFMx), 2011 WL 6849048, at *9 (C.D. Cal. Dec. 13, 2011)) (internal quotations omitted).

Under California law, financial institutions generally do not owe borrowers a duty of care unless their involvement in the loan transaction exceeds the scope of their "conventional role as a mere lender of money." *See Nymark v. Heart Fed. Savings & Loan Ass'n*, 231 Cal. App. 3d 1089, 1095–96 (1991) (citations omitted). To determine "whether a financial institution owes a duty of care to a borrower-client," courts must balance the following non-exhaustive factors:

> [1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm.

*Id.* at 1098 (quotation marks and citations omitted). *See Rowland v. JPMorgan Chase Bank, N.A.*, No. C 14-00036 LB, 2014 WL 992005, at *8–9 (N.D. Cal. Mar. 12, 2014); *Ansanelli v. JP Morgan Chase Bank, N.A.*, No. C 10-03892 WHA, 2011 WL 1134451, at *7 (N.D. Cal. Mar. 28, 2011).

Here, Ms. Patino does not plausibly plead that the defendants owed her a duty of care. She instead re-alleges many of her other grievances and concludes that these acts amount to negligence. For example, she says "No monthly mortgage statement is negligence"; "Negligence is recording a Notice of Default with [the] wrong amount"; "Negligence is recording a Trustee Sale in a State county Recorders Office with a 'FORGERY' signature from the Trustees the Wolf Firm"; "Negligence is being treated badly by customer service representatives"; "Negligence is waiting over 7 years so that the homeowner cannot pay a lump sum"; and "Negligence is where a Notice of Default was recorded without a correct amount and over charging."[42] She asserts that certain of Franklin's and Bosco's statements — such as that they maintain close contact and

---

[42] *Id.* at 12, 16.

frequently communicate with borrowers — are "1,000% false."[43] She also alleges that she called customer service (without identifying which defendant's customer service), that the service representative scolded and talked down to her, and that she cried "after [she] got off the phone."[44] And, Ms. Patino asserts that when the Notice of Default was filed, she "was in possession of someone else['s] loan history sta[t]ing that the amount due was $25,000."[45]

Ms. Patino's above assertions are conclusory, vague, and confusing, and do not show that any of the defendants went beyond their conventional mortgage financing and servicing roles. Some of her allegations, such as the defendants' failure to send monthly statements, appear based in statute and thus an attempt to establish negligence per se. But as discussed above, these assertions are too vague and ambiguous as to both the statutes supposedly violated and the defendants that violated them. And, in any event, "'an underlying claim of ordinary negligence must be available before [negligence per se] can be employed.'" *Winter v. Chevy Chase Bank*, No. C 09-3187 SI, 2009 WL 351769, at *3 (N.D. Cal. Oct. 26, 2009) (quoting *Cal. Serv. Station and Auto. Repair Ass'n v. Am. Home Assurance Co.*, 62 Cal. App. 4th 1166, 1178 (1998)) (alteration in original). Similarly, she asserts that the customer representative (possibly, "Sindy" of The Wolf Firm)[46] acted wrongfully and a defendant (it is unclear which) acted wrongfully by confusing her loan history with another's. Although these acts may demonstrate a lack of care, absent a duty (*i.e.* an act beyond the institutions' conventional roles), it is legally irrelevant. *See Varnado v. Midland Funding LLC*, 43 F. Supp. 3d 985, 990–91 (N.D. Cal. 2014) (quoting *Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.,* 49 Cal.App.4th 472, 481 (1996)).

In sum, then, Ms. Patino fails to demonstrate that any of the defendants owed her a duty of care. The court therefore dismisses her negligence claims but grants leave to amend.

---

[43] *Id.* at 13.

[44] *Id.* at 14.

[45] *Id.* at 15.

[46] *Id.* at 7.

**2.7: Claim 8: Declaratory Relief**

Ms. Patino asserts a claim for declaratory relief.[47] The federal Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). To fall within the Act's ambit, the "case of actual controversy" must be "definite and concrete, touching the legal relations of parties having adverse legal interests, . . . real and substantial and admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 127 (2007) (internal quotation marks omitted) (quoting *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240–41 (1937)).

Here, Ms. Patino's claim (properly, a request for remedy) repeats her other various contentions, or what she apparently sees as the parties' disputes — *i.e.* the legality of recorded documents; the validity of the Notice of Default; the mix up with her and another's loan histories; the identity of the loan's true owner; and the legality of the foreclosure proceedings.[48] Because Ms. Patino's substantive claims are vague, ambiguous, and confusing (not definite, concrete, and specific), and because the court dismisses all of Ms. Patino's claims, it dismisses this one, too. She may re-allege her request for declaratory relief if she amends her complaint.

## 3. Ms. Patino's Other Allegations

Throughout her complaint and her opposition brief, Ms. Patino alludes to various other claims without actually asserting them. For example, she frequently says that the defendants engaged in fraud — *i.e.* by fraudulently obtaining the loan.[49] She also states that she was mentally incapable of contracting and only entered the loan agreement by way of duress (thus, maybe arguing the

---

[47] *Id.* at 16–17.

[48] *Id.*

[49] *See, e.g.*, *id.* at 3, 11.

agreement should be voided).[50] And, she appears to touch on rights under the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601 *et seq.*, and the Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq.* For instance, buried in her negligence claim, she alleges that she sent a "qualified written request which came back that it would be burdensome for defendants to comply with [her] request" — a potential RESPA violation.[51] *See* 12 U.S.C. § 2605(e). She also repeatedly asserts that she rescinded the loan — a potential TILA action.[52] *See* 15 U.S.C. § 1635. Yet she does not actually assert any of these as claims against the defendants.

To the extent Ms. Patino intended to raise these additional claims, the court dismisses them for lack of plausibility; and in the case of her fraud claim, for failure to plead fraud with particularity because she pleads no facts about how the named defendants fraudulently procured the debt (if anything, that claim may more properly be asserted against Cal State 9 Credit Union). Fed. R. Civ. P. 9(b); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ("Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged.") Ms. Patino may assert these additional claims in her amended complaint, if she chooses to file one. If she does, the court encourages her to make explicit which claims she intends to bring.

**4. Leave to Amend**

Ms. Patino alleges several new facts in her opposition brief and attached declaration. The court does not consider these facts in ruling on the current motion because, generally, it cannot consider material outside of the complaint. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001); *Paulsen v. CNF, Inc.*, 391 F. Supp. 2d 804, 807 (N.D. Cal. 2005) ("[T]he court cannot consider material outside the complaint (e.g., facts presented in briefs, affidavits or discovery materials).") (quoting Schwarzer, Tashima & Wagstaffe, Rutter Group Prac. Guide: Federal Civ. Pro. Before Trial § 9:211 (The Rutter Group 2004) (internal quotations omitted)

---

[50] *See, e.g.*, *id.* at 3–4, 9–10.

[51] *Id.* at 15.

[52] *Id.* at 4, 10; Opposition at 17.

ORDER — No. 16-cv-02695-LB                    13

(alteration in original)). Ms. Patino's new factual allegations, however, and any others that she may wish to include, may give rise to more plausible claims for relief: the court cannot say that amendment would be futile. The court therefore grants Ms. Patino leave to amend all of her claims except for her second (California Penal Code § 115) and sixth ("Statute of Limitations 6 Years") claims.

## CONCLUSION

The court grants the defendants' motion and dismisses Ms. Patino's complaint with leave to amend. Her amended complaint is due within 28 days of the date of this order. If Ms. Patino does not file an amended complaint within this time, the court will dismiss the action without prejudice and the Clerk of Court will close the case.

**IT IS SO ORDERED.**

Dated: August 29, 2016

_____
LAUREL BEELER
United States Magistrate Judge