1
2
3
4
5
6
7

8 UNITED STATES DISTRICT COURT

9 NORTHERN DISTRICT OF CALIFORNIA

10 San Francisco Division

11

12 PENNY L. PATINO,

Case No. 16-cv-02695-LB

13 Plaintiff,

14 v.

**ORDER GRANTING THE
DEFENDANTS' MOTION TO DISMISS**

15 FRANKLIN CREDIT MANAGEMENT
CORPORATION, et al.,

Re: ECF No. 75

16
17 Defendants.

18 **INTRODUCTION**

19 In this mortgage-foreclosure case, Penny Patino (the borrower) alleges that Cal State 9 Credit

20 Union (the lender) improperly refused to accept her notice of rescission under the Truth in

21 Lending Act ("TILA").[1] Over nine years later, she brought this case against Bosco Credit (Cal

22 State 9's assignee), Franklin Credit Management (the deed-of-trust beneficiary), and The Wolf

23 Firm (the trustee).[2] In her Second Amended Complaint, Ms. Patino asserts a claim for damages

24 under TILA and, using that as a federal-jurisdiction hook, asserts five state-law claims against

25

---

26 [1] Second Amended Compl. ("SAC") – ECF No. 65, ¶¶ 19–23, 34–39. Record citations refer to material
in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the
27 top of documents.

28 [2] Ms. Patino has since dismissed The Wolf Firm from the case. (*See* ECF No. 53.)

ORDER — No. 16-cv-02695-LB

1    Bosco and Franklin. Those two defendants now move to dismiss the case under Rule 12(b)(6)

2    because, they say, the statute of limitations bars her claims.

3        The court held a hearing on the motion on May 25, 2017. The court grants the motion and

4    dismisses with prejudice Ms. Patino's TILA claim because it is untimely. The court declines to

5    exercise supplemental jurisdiction over her state-law claims and dismisses them without prejudice.

6

7                                          **STATEMENT**

8        Ms. Patino obtained a $155,571.67 home-equity credit line from Cal State 9 Credit Union on

9    July 14, 2006.[3] She executed a promissory note and a deed of trust, and Cal State 9 provided a

10   "Notice of Right of Rescission" informing her of her right to rescind, or cancel, the loan.[4] The

11   notice said that she could do so within three business days by sending Cal State 9 a written

12   statement declaring her intention to cancel.[5]

13       "At this time in her life, [Ms.] Patino's cognitive abilities to fully understand and comprehend

14   the significance of her financial decisions were extremely limited."[6] After suffering "an unbroken

15   series of mentally and physically abusive relationships," Ms. Patino was diagnosed with post-

16   traumatic stress disorder and battered-woman syndrome.[7] In 2006, when she got the loan, she

17   suffered "severe anxiety and depression" and did "not understand[] [or] realiz[e] the extent of the

18   financial obligation."[8]

19       Nevertheless, on July 18 Ms. Patino "attempted to rescind the loan transaction."[9] She faxed a

20   handwritten note saying "I wish to cancel," and hand-delivered a second letter stating "Today I

21   cancelled totally."[10] She then sent Cal State 9 a check for $155,571.67, the full loan balance.[11] But

22   _____

23   [3] SAC ¶ 17, Ex. A.

     [4] *Id.* ¶¶ 17–18, Exs. A & B.

24   [5] *Id.* ¶ 19, Ex. B.

25   [6] *Id.* ¶ 20.

26   [7] *Id.*

     [8] *Id.* ¶¶ 20–21.

27   [9] *Id.* ¶ 21.

28   [10] *Id.* ¶ 21, Ex. D.

1 Cal State 9 "refused to accept [her] check[] and refused to allow [her] to cancel the loan."[12] Ms.

2 Patino instead received "her check back with an 'X' and the word 'void' written on [it]," which

3 she alleges Cal State 9 wrote in attempt "to disregard [her] rescission and cancellation of the

4 loan."[13] Ms. Patino alleges that her "post[-]traumatic stress disorder prevented [her] from fully

5 understanding this sequence of events, and from fully understanding that no rescission had taken

6 place."[14] She continued to make payments.[15]

7 In 2008, Cal State 9 assigned its interest in Ms. Patino's loan to Bosco Credit.[16] Seven years

8 later, The Wolf Firm (the deed-of-trust trustee) sent Ms. Patino a demand letter "stating that she

9 was in default on her obligations under the promissory note and deed of trust in the amount of

10 $77,177.57."[17] The Wolf Firm "threaten[ed] that if payment was not received in 30 days, then the

11 entire sum of both principal and interest [would] become due, on penalty of the power of sale in

12 the deed of trust."[18] Over the next several months, the firm took action on Ms. Patino's default:

13 first, it recorded a Notice of Default, "stating that the amount to re-instate the loan was

14 $79,612.89"; then a Notice of Trustee's Sale, "stating that the amount of unpaid balance and other

15 charges was $248,329.46."[19]

16 Ms. Patino then sued in May 2016.[20] After the court dismissed her original complaint with

17 leave to amend, the court appointed counsel for Ms. Patino.[21] The court subsequently dismissed

18 her First Amended Complaint, again with leave to amend her TILA claim, and (after allowing the

19

20 _____

21 [11] *Id.* ¶ 22.

[12] *Id.* ¶ 23.

22 [13] *Id.* ¶ 23, Ex. E.

23 [14] *Id.* ¶ 28.

[15] *Id.* ¶ 27.

24 [16] *Id.* ¶¶ 25–26, Ex. G. Ms. Patino challenges the validity of the assignment. (*See id.* ¶¶ 25–26, 42–53.)

25 [17] *Id.* ¶ 30, Ex. I.

26 [18] *Id.* ¶ 30.

[19] *Id.* ¶¶ 32–33, Exs. K & L.

27 [20] Compl. – ECF No. 1.

28 [21] *See* ECF Nos. 29, 32, 34.

1    defendants to respond) granted her request for a temporary restraining order.[22] In her Second

2    Amended Complaint ("SAC"), Ms. Patino asserts seven claims: (1) violation of TILA; (2)

3    wrongful foreclosure; (3) unfair business practices under California Business & Professions Code

4    § 17200; (4) breach of contract; (5) intentional infliction of emotional distress; (6) negligent

5    infliction of emotional distress; and (7) quiet title. She requests damages, declaratory relief, and an

6    injunction.[23] The defendants move to dismiss the SAC because (among other things) they say her

7    claims are barred by the statute of limitations.[24]

8

9                          **RULE 12(B)(6) LEGAL STANDARD**

10       Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of a

11   "failure to state a claim upon which relief can be granted." A dismissal under Rule 12(b)(6) may

12   be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under

13   a cognizable legal theory. *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir.

14   2008); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

15       A complaint must contain a "short and plain statement of the claim showing that the pleader is

16   entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon

17   which they rest. *See* Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555

18   (2007). A complaint does not need detailed factual allegations, but "a plaintiff's obligation to

19   provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a

20   formulaic recitation of the elements of a cause of action will not do. Factual allegations must be

21   enough to raise a claim for relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555

22   (internal citations omitted).

23       To survive a motion to dismiss, a complaint must contain sufficient factual allegations,

24   accepted as true, "'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

25

26   _____

27   [22] *See* ECF Nos. 51, 73, 74.

     [23] SAC ¶¶ 66–74, Prayer.

28   [24] Motion to Dismiss – ECF No. 75; Opposition – ECF No. 78; Reply – ECF No. 80.

United States District Court
Northern District of California

U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"" *Id.* (quoting *Twombly*, 550 U.S. at 557).

If a court dismisses a complaint, it should give leave to amend unless the "the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

## ANALYSIS

### 1. The Statute of Limitations Bars Ms. Patino's TILA Claim

Ms. Patino seeks damages under TILA because Cal State 9 did not honor her rescission notice.[25] The issue is whether Ms. Patino filed her TILA claim too late or whether it eludes the Act's time bar under 15 U.S.C. § 1640(e)'s "recoupment exception."

"Congress passed [TILA] to help consumers 'avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing.'" *Jesinoski v. Countrywide Home Loans, Inc.*, 135 S. Ct. 790, 791–92 (2015) (quoting 15 U.S.C. § 1601(a)). To that end, TILA affords borrowers time-limited rights to rescission and monetary relief for creditors' violations of its provisions. *See* 15 U.S.C. § 1635 (rescission); *id.* § 1640 (damages).

A borrower may rescind a loan under TILA within three business days "following the consumption of the transaction or the delivery of [TILA-required disclosures], whichever is later, by notifying the creditor . . . of his intention to do so." 15 U.S.C. § 1635(a); *Jesinoski*, 135 S. Ct. at 792. If the lender never provides the required disclosures, the borrower's right of rescission

---

[25] *See* SAC ¶¶ 34–39.

1    expires after three years. 15 U.S.C. § 1635(f); *Jesinoski*, 135 S. Ct. at 792. To exercise the right,

2    the borrower need only give timely notice. *Jesinoski*, 135 S. Ct. at 792.

3        TILA imposes certain obligations on creditors when a borrower gives notice of rescission. *See*

4    15 U.S.C. § 1635(b). For example, within twenty days after receiving a notice of rescission, a

5    creditor must return to the borrower any money or property received and must "take any action

6    necessary or appropriate to reflect the termination of any security interest." *Id.* A creditor's failure

7    to honor a timely rescission request is an actionable TILA violation. *See Mitchell v. Bank of Am.*,

8    No. 10cv432 L(WVG), 2011 WL 711579, at *4 (S.D. Cal. Jan. 31, 2011) ("Failure to respond to

9    plaintiffs' notice of rescission is a separate violation which provides a basis for statutory damages

10   under [TILA]."); *Buick v. World Savings Bank*, 637 F. Supp. 2d 765, 771–72 (E.D. Cal. 2008). So,

11   a creditor that breaches these obligations may be liable for damages. *See* 15 U.S.C. § 1635(g)

12   (where "a creditor has violated this section, in addition to rescission the court may award relief

13   under section 1640"); *id.* § 1640 (damages for TILA violations).

14       The statute of limitations on TILA-damages claims is generally one year from the date of the

15   violation. 15 U.S.C. § 1640(e). Thus, "[a] claim for damages based on violations of TILA's

16   rescission provision" — *i.e.* where a creditor fails to honor a rescission request — "must be

17   brought within one year" of such failure. *Cook v. Wells Fargo Bank*, No. 09cv2757 WQH (NLS),

18   2010 WL 1289892, at *3 (S.D. Cal. Mar. 26, 2010). But "the doctrine of equitable tolling may, in

19   the appropriate circumstances, suspend the limitations period until the borrower discovers or had

20   reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA

21   [damages] action." *King v. California*, 784 F.2d 910, 915 (9th Cir. 1986). Such tolling is available

22   only if "despite all due diligence, a plaintiff is unable to obtain vital information bearing on the

23   existence of his claim." *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000), *overruled*

24   *on other grounds by Socop-Gonzalez v. INS*, 272 F.3d 1176 (9th Cir. 2001).

25       In addition to equitable tolling, a TILA-damages claim may avoid the one-year limitations

26   period if it falls within § 1640(e)'s recoupment exception. That section provides that TILA's one-

27   year period will not bar a recoupment claim asserted defensively in "an action to collect a debt":

28

> This subsection does not bar a person from asserting a violation of this subchapter in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action, except as otherwise provided by State law.

15 U.S.C. § 1640(e). "Recoupment" is the defendant's right to, in the same action, "cut down the plaintiff's demand either because the plaintiff has not complied with some cross obligation of the contract on which he sues or because he has violated some duty which the law imposes on him in the making or performance of that contract." *In re Smith*, 737 F.2d 1549, 1552 n.7 (11th Cir. 1984) (quoting Ballentine's Law Dictionary 1070 (3d ed. 1969)). It is a "defense arising out of some feature of the transaction upon which the plaintiff's action is grounded" that, under TILA, "survives the expiration of the period provided by a statute of limitation that would otherwise bar the recoupment claim as an independent cause of action." *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 415 (1998) (internal quotations and citations omitted).

A recoupment claimant must show that: "(1) the TILA violation and the creditor's debt claim arose from the same transaction, (2) she is asserting her claim as a *defense*, and (3) the 'main action' is timely." *In re Smith*, 737 F.2d at 1553; *see also Ortiz v. Accredited Home Lenders, Inc.*, 639 F. Supp. 2d 1159, 1164 (S.D. Cal. 2009). All three elements must be met. *In re Smith*, 737 F.2d at 1553.

Here, despite Ms. Patino's prior claims of incapacity and hints at equitable tolling,[26] she does not now argue that TILA's limitations period should be tolled. She instead asserts that she brought the complaint "[i]n defense against defendants' efforts to foreclose on her home," and thus her TILA claim falls within § 1640(e)'s recoupment exception.[27] The principal issue is whether Ms. Patino asserts the TILA claim defensively — satisfying *Smith*'s second prong — or offensively, subject to TILA's limitations period.

Ms. Patino points to several bankruptcy cases allowing debtors to assert TILA-recoupment claims where the creditor initiated non-judicial foreclosure and filed a proof of claim in bankruptcy court. *See, e.g.*, *Matter of Coxson*, 43 F.3d 189 (5th Cir. 1995); *In re Beach*, 447 B.R.

---

[26] *See* Order on TRO – ECF No. 74 at 4.

[27] *See* SAC ¶ 34; Opposition at 9.

1    313 (D. Idaho 2011); *In re Woolaghan*, 140 B.R. 377 (W.D. Pa. 1992).[28] For example, in *Matter*

2    *of Coxson*, the debtors filed an "adversary proceeding against [the creditor] in the bankruptcy

3    court" in response to the creditor's foreclosure efforts. 43 F.3d at 190. They brought a TILA claim,

4    which the creditor argued was time barred. *Id.* at 193. The creditor urged "that the [debtors]

5    'hauled' [it] into court and initiated th[e] lawsuit, and therefore the TILA claim [was] used

6    offensively, rather than defensively." *Id.* at 194. The Fifth Circuit disagreed because the debtors

7    "filed th[e] suit in response to [the creditor's] filing of a proof of claim in the bankruptcy court and

8    its foreclosure actions." *Id.* (agreeing with the district court's analysis). The filing of a proof of

9    claim was "an action to collect the debt," and so the TILA claim was raised defensively. *Id.*

10        The *In re Beach* court similarly held that "a non-judicial foreclosure sale is an action to collect

11    a debt for the purposes of the TILA statute of limitations" and allowed a TILA claim "asserted

12    defensively in response to the bank's initiation of a non-judicial foreclosure action." 447 B.R. at

13    321–22. *See also In re Woolaghan*, 140 B.R. at 383–84 (holding that "the act of filing a proof of

14    claim is an action to collect a debt" in bankruptcy court and noting that "the right of a debtor in

15    bankruptcy to invoke the doctrine of recoupment to reduce a secured proof of claim of a mortgage

16    lender by the amount of statutory TILA damages has been recognized again and again in the case

17    law.").

18        But "federal district courts in California have reached the conclusion opposite of *Coxson*" and

19    *Beach. Lima v. Wachovia Mortg. Corp.*, No. C09-04798 TEH, 2010 WL 1223234, at *5 (N.D.

20    Cal. Mar. 25, 2010) (collecting cases); *see also Harris v. Wells Fargo Home Mortg.*, No. CV10-

21    09496 ODW (CWx), 2011 WL 1134216, at *3 (C.D. Cal. Mar. 23, 2011) (noting that "[t]he

22    general rule is that when the debtor hales the creditor into court, the claim by the debtor is

23    affirmative rather than defensive," and, "[s]pecifically, in non-judicial foreclosure cases, federal

24    district courts in California conclude that non-judicial foreclosures are not 'actions' as

25    contemplated by TILA") (internal quotations and citations omitted); *Alakozai v. Valley Credit*

26    *Union*, No. C10-02454 HRL, 2010 WL 5017173, at *3 (N.D. Cal. Dec. 3, 2010) (holding that

27

28    [28] *See* Opposition at 9–13.

United States District Court
Northern District of California

1  "insofar as [the plaintiff] asserts recoupment in response to defendant's non-judicial foreclosure,

2  his claim is not properly deemed a 'defense' to an 'action' for purposes of avoiding the applicable

3  statute of limitations"); *Parcray v. Shea Mortg. Inc.*, No. CV-F-09-1942 OWW/GSA, 2010 WL

4  1659369, at \*17–\*18 (E.D. Cal. Apr. 23, 2010) (denying plaintiff's argument that "her TILA

5  claim is pled defensively to reduce or set-off the amount she owes Defendant"); *Carillo v.*

6  *Citimortgage, Inc.*, No. CV 09-02404 AHM (CWx), 2009 WL 3233534, at \*3 (C.D. Cal. Sept. 30,

7  2009) ("A foreclosure action is not an 'action to collect debt' within the meaning of the

8  recoupment exception."); *Ortiz*, 639 F. Supp. 2d at 1165 ("[N]on-judicial foreclosures are not

9  'actions' as contemplated by TILA.").

10      For example, in *Lima v. Wachovia Mortgage Corporation*, the statute of limitations barred the

11  borrower's TILA nondisclosure claim. 2010 WL 1223234 at \*6. There, the borrower defaulted on

12  her loan and the bank initiated non-judicial foreclosure proceedings. *Id.* at \*1. The borrower did

13  not file her complaint until four years after she took out the loan and so the bank argued the claim

14  was barred. *Id.* at \*5. The borrower, however, urged that the TILA claim was "a recoupment

15  defense to the foreclosure of her property" and thus it should survive. *Id.* "Although section

16  1640(e) allows recoupment to be asserted defensively in an 'action to collect the debt,' 'non-

17  judicial foreclosures are not 'actions' as contemplated by TILA." *Id.* (quoting *Ortiz*, 639 F. Supp.

18  2d at 1165) (internal quotations omitted). So the borrower's "lawsuit [was] not a defensive action"

19  and she could not "bypass the one-year statute of limitations by treating her claim as a recoupment

20  defense." *Id.* at \*5–\*6. The court dismissed the claim. *Id.* at \*6.

21      Here, as in *Lima*, Ms. Patino cannot bypass TILA's statute of limitations by labeling her claim

22  as a recoupment defense. Ms. Patino signed the loan documents on July 14, 2006.[29] Within three

23  business days, she tried to rescind the loan by sending Cal State 9 a note and a letter saying "I

24  wish to cancel," and "Today I cancelled totally."[30] But Cal State 9 allegedly "refused to accept

25  [her] check, and refused to allow [her] to cancel the loan."[31] As described in the court's prior

26  _____

27  [29] SAC ¶ 17.

    [30] *Id.* ¶ 21.

28  [31] *Id.* ¶ 23.

ORDER — No. 16-cv-02695-LB         9

1   order, the limitations period began twenty days after Ms. Patino's rescission notice (the day that

2   Cal State 9 breached its obligation to honor the request), meaning that it ended in August 2007.[32]

3   Although she tries to bring the claim defensively against the defendants' foreclosure efforts, those

4   efforts are not an "action" under TILA, and so § 1640(e)'s recoupment exception does not save the

5   claim, which she brought over seven years too late.

6       Ms. Patino does not attempt to distinguish *Lima*, *Ortiz*, or the other cases cited above. She

7   instead argues that the court should not follow those cases because they are unpublished (except

8   for *Ortiz*) and do not address 15 U.S.C. § 1640(k)(1).[33] First, contrary to Ms. Patino's assertion,

9   the court thinks the cases (even the unpublished ones) contain sufficiently thorough and well-

10  developed reasoning. Second, § 1640(k) is inapplicable here and was inapplicable in the cases

11  cited (including *Ortiz*) because it refers only to a limited subset of recoupment-based claims:

12          Notwithstanding any other provision of law, when a creditor, assignee, or other
            holder of a residential mortgage loan or anyone acting on behalf of such creditor,
13          assignee, or holder, initiates a judicial or nonjudicial foreclosure of the residential
            mortgage loan, or any other action to collect the debt in connection with such loan,
14          *a consumer may assert a violation by a creditor of paragraph (1) or (2) of section
            1639b(c) of this title, or of section 1639c(a) of this title*, as a matter of defense by
15          recoupment or set off without regard for the time limit on a private action for
            damages under subsection (e).
16

17  15 U.S.C. § 1640(k)(1) (emphasis added). Ms. Patino does not assert a claim under § 1639b(c) or

18  § 1639c(a). She argues this section saved the *In re Beach* plaintiff's § 1632 and § 1639 claims.[34]

19  But *In re Beach* relied on § 1640(e) (as did the other cases above), not § 1640(k). *See* 447 B.R. at

20  320–22. The court denies her arguments.

21      In sum, the court follows the weight of authority in California-based federal district courts,

22  adopts the reasoning in *Lima* and *Ortiz* as persuasive, and declines to follow *Beach* and *Coxson*.

23  *See Lima*, 2010 WL 1223234 at *5 ("[F]ederal district courts in California have reached the

24  conclusion opposite that of *Coxson*."); *see also Harris*, 2011 WL 1134216, at *3 (distinguishing

25

26  _____

    [32] Order – ECF No. 51 at 8.

27  [33] *See* Opposition at 9–11.

28  [34] *Id.* at 13.

ORDER — No. 16-cv-02695-LB                10

*Coxson*, where "the court found that because the defendant offered a proof of claim in the

bankruptcy court, which constituted 'an action to collect the debt,' the plaintiff's separate civil

action in response was defensive").

The court dismisses with prejudice Ms. Patino's TILA claim because it is barred by the statute

of limitations.

### 2. The Court Declines to Exercise Supplemental Jurisdiction

"[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of

their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties

either overlook or elect not to press." *Henderson ex. rel. Henderson v. Shinseki*, 562 U.S. 428, 434

(2011). And although courts may exercise supplemental jurisdiction over state law claims "that are

so related to claims in the action within [the court's] original jurisdiction that they form part of the

same case or controversy," 28 U.S.C. § 1367(a), a court may decline to exercise supplemental

jurisdiction where it "has dismissed all claims over which it has original jurisdiction," *id*.

§ 1367(c)(3). Indeed, unless "considerations of judicial economy, convenience[,] and fairness to

litigants" weigh in favor of exercising supplemental jurisdiction, "a federal court should hesitate to

exercise jurisdiction over state claims." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726

(1966); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) ("[A] federal court

should consider and weigh in each case, and at every stage of the litigation, the values of judicial

economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction

over a case brought in that court involving pendent state-law claims."), *superseded on other*

*grounds by statute as recognized in Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 557 (10th Cir.

2000).

The court dismisses Ms. Patino's only federal claim (TILA). Her remaining claims all arise

under state law and do not support diversity jurisdiction because the parties are not completely

diverse: Ms. Patino lives in California and Bosco Credit has its principal place of business here,

too.[35] Because the case is in its early stages and because only state-law claims remain, the court declines to exercise supplemental jurisdiction in the interests of judicial economy and comity.

## CONCLUSION

The court dismisses Ms. Patino's TILA claim with prejudice because it is barred by the statute of limitations. The court declines to exercise supplemental jurisdiction over her state-law claims and so dismisses those claims without prejudice.

**IT IS SO ORDERED.**

Dated: May 25, 2017

_____
LAUREL BEELER
United States Magistrate Judge

---

[35] SAC ¶ 2; Compl. – ECF No. 1 at 2.

ORDER — No. 16-cv-02695-LB          12